IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TOUSSAINT MINETT, SR.,

                                                    OPINION AND ORDER

                Plaintiff,

                                                        18-cv-743-bbc

     v.

BRADLEY OVERWACHTER,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiff Toussaint Minett, Sr., who initially filed a pro se complaint but is now

represented by counsel, is proceeding on a claim that defendant Bradley Overwachter

wrongly arrested him for operating a vehicle while intoxicated, in violation of his rights

under the Fourth Amendment. Before the court is defendant's motion for summary

judgment in which he maintains that he is entitled to qualified immunity with respect to

plaintiff's claim. Dkt. #17. Because I conclude that defendant is entitled to qualified

immunity, I am granting the motion.


                          PRELIMINARY EVIDENTIARY MATTER

       Plaintiff objects to defendant's proposed findings of fact nos. 22 to 23 and 25-29 on

the ground that they are based on hearsay contained in the police report of the incident in

question. Specifically, plaintiff objects to statements made by two other police officers who

reported to the scene with defendant and authored supplements to the police report.

However, a police report is admissible under the business records exception to the hearsay

rule if:  (1) "the record was made at or near the time by—or from information transmitted by—someone with knowledge"; (2) "the record was kept in the ordinary course of a regularly conducted activity of a business, organization, occupation, or calling"; (3) "making the record was a regular practice of that activity"; (4) "all these conditions are shown by the testimony of a custodian or another qualified witness"; and (5) "the opponent does not show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6).  Similarly, public records are admissible to the extent that they set out "a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel," as long as there is no reason to doubt the trustworthiness of the record.  Fed. R. Evid. 803(8)(A)(ii) and (B).  See also Jordan v. Binns, 712 F.3d 1123, 1133 (7th Cir. 2013) (police reports generally excluded as hearsay *except* to extent that they incorporate firsthand observations of officer).  After reviewing the report and defendant's affidavit submitted in conjunction with it, I am satisfied that these conditions are satisfied, and plaintiff has not argued otherwise.  Therefore, the officers' observations and statements contained in the police report are admissible.

Second, plaintiff contends that third-party witness statements summarized in the police report are inadmissible hearsay (or hearsay within hearsay).  Jordan, 712 F.3d at 1133 ("[T]hird-party statements contained in a police report do not become admissible for their truth by virtue of their presence in a public record and instead must have an independent basis for admissibility").  However, plaintiff fails to explain how the third-party witness

statements are being offered as proof of the truth of the matter asserted. Fed. R. Evid. 801(c)(2) ("'Hearsay' means a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement."). See also Torry v. City of Chicago, 932 F.3d 579, 585 (7th Cir. 2019) (failure to develop hearsay argument is enough to dispense with it); Mathews v. REV Recreation Group, Inc., 931 F.3d 619, 623 n.2 (7th Cir. 2019). The witness statements summarized in the police report have been offered to show what information had been provided to defendant and the effect that this information had on him. Torry, 932 F.3d at 585 (statements introduced to show effect on listener, rather than truth of matter asserted, are not hearsay) (citing 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8:20 (4th ed. 2013)); Woods v. City of Chicago, 234 F.3d 979, 986-87 (7th Cir. 2000) (statement in police report not hearsay if offered "to show the effect that the statements had on the officers" who heard it). For example, statements by plaintiff's supervisor that plaintiff had not returned to work after a break and that a cleaning crew member had seen plaintiff driving a short time earlier were not offered to prove that plaintiff had been driving while intoxicated but rather to show how a reasonable officer might have reacted to that information. Torry, 932 F.3d at 585 (suspect descriptions contained in police report offered to show that competent officer aware of that information could conclude that there was reasonable suspicion to stop Torry and his passengers); Woods, 234 F.3d at 987 (Fourth Amendment analysis does not turn on whether witness tip turns out to be true). Accordingly, plaintiff's hearsay objections with respect to the third-party witness statements are denied.

From the parties' proposed findings of fact and evidence in the record, I find the following facts to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

Plaintiff Toussaint Minett was employed by the Wisconsin Department of Administration as a senior power plant engineer in July 2016. At that time, he was on light duty because of an injury and he was performing maintenance at the state capitol building. Defendant Bradley Duerwachter worked as a police officer for the Wisconsin Division of Capitol Police from November 2, 2015 until March 25, 2017. He then took a position with the Oconomowoc Police Department, where he is currently employed.

A little after 10:00 p.m. on July 14, 2016, defendant was patrolling downtown Madison in his squad car when he noticed a red sports utility vehicle parked in the Martin Luther King, Jr. Boulevard driveway of the capitol building. Defendant heard loud music coming from the vehicle, so he parked his squad in the driveway behind the vehicle so he could investigate. (Defendant says that the music could be heard from a block away. Plaintiff admits that he was playing music but he says that the music could not be heard from a block away.) At that time, plaintiff was sitting on a park bench with three other members of the cleaning staff. Defendant exited his squad and asked plaintiff to turn down the radio. According to the police report, defendant made contact with plaintiff at approximately 10:06 p.m., and Officer Bryn Callen reported to the scene on foot at 10:08 p.m. (The parties dispute who encountered the other first. Defendant says that plaintiff

approached him and said that the vehicle was his. Plaintiff says that defendant was the one who approached him and asked for the music to be turned down.) The sports utility vehicle is not registered to plaintiff and belongs to his son.

Plaintiff turned the radio off by grabbing the keys from the ignition. The engine was off at the time. He then dropped the keys and stated that he was only having a "good time." Defendant smelled the odor of intoxicants when he was talking with plaintiff and observed that plaintiff had slurred speech, was having trouble keeping his balance and had a hard time sitting still. Based on his training and experience dealing with intoxicated people around the capitol building, defendant believed that plaintiff was intoxicated. (Plaintiff says that he did not "feel" intoxicated but he does not otherwise contradict defendant's observations of his behavior and actions.) Defendant ordered plaintiff to sit on the ground, not move and produce identification. (Although defendant does not dispute this fact, he says that he ordered plaintiff to sit on the bench where he observed plaintiff swaying.) Plaintiff was not free to go at that point.

Defendant took plaintiff's identification to the squad car to check plaintiff's driving record and criminal history. He learned that plaintiff had a revoked driving status and an open case with a no-driving condition. After about 10 minutes, defendant walked back to plaintiff, told him to stand up and asked him whether he had been drinking. Plaintiff told defendant that he had drunk a couple of beers. Defendant observed that plaintiff was wearing a shirt that he recognized as a shirt worn by the capitol building cleaning crew and asked plaintiff whether he had been driving. Plaintiff said no, but it did not appear to

defendant that there was anyone else in the vicinity who could have driven the vehicle. (Although plaintiff said he had been sitting with three other men when defendant arrived, he does not explain their whereabouts or otherwise dispute defendant's observation.) Because defendant was concerned that plaintiff may try to drive home, he asked plaintiff if there was someone he could call to pick him up. Plaintiff gave defendant his wife's number, and defendant called her to come pick up plaintiff. Defendant's questioning of plaintiff lasted seven or eight minutes. Defendant did not return plaintiff's identification.

At this point, defendant did not believe that a crime had been committed, but he was concerned because plaintiff seemed "highly intoxicated." Therefore, he ordered plaintiff to take a preliminary breath test to determine whether plaintiff needed medical attention. Officer Callan performed the test. Plaintiff's blood alcohol content was .146 percent, which is well above the legal limit to drive but not high enough to require defendant to bring plaintiff to a detoxification center for medical care. At some point after the preliminary breath test, while defendant was talking with plaintiff, Officer Callen spoke with a witness who claimed to have seen plaintiff driving recklessly earlier that evening.

(Plaintiff says that after the test, the officers handcuffed him and sat him on the ground for about 30 minutes while defendant canvassed the capitol grounds. However, defendant has produced video footage that clearly shows that this did not happen. The United States Supreme Court has held that in cases in which video evidence contradicts a plaintiff's version of events, the court should not accept the plaintiff's story for purposes of summary judgment. Scott v. Harris, 550 U.S. 372, 378-80 (2007); Gillis v. Pollard, 554 Fed. Appx. 502, 506 (7th Cir. 2014). A review of the video shows that plaintiff was not

handcuffed or placed on the ground after the preliminary breath tests. Dkt. #20, exh. #102 at 45:25 to 52:40. Rather, he was handcuffed about 15 minutes later, after stumbling during a field sobriety test. Id. at 1:15:58.)

At approximately 10:30 p.m., Sergeant Andrew Hyatt responded to the scene and observed that plaintiff appeared to be very intoxicated with slurred speech, bloodshot and glassy eyes and difficulty keeping his balance. Hyatt asked plaintiff if he was taking medications, and plaintiff said that he was taking a muscle relaxant. Plaintiff retrieved the pill bottle from the car, and while he was doing so, Hyatt saw a bottle of vodka in the center console. (Hyatt says that the bottle was open, but plaintiff says that it was sealed.)

While Hyatt was talking to plaintiff, a witness by the name of Sue flagged down defendant and told him that she was plaintiff's supervisor. Sue told defendant that plaintiff had failed to return to work from a break and that she suspected that plaintiff had been drinking at work the night before. Sue also told defendant that another witness in the capitol building claimed to have seen plaintiff driving a short time earlier. Based on this information, defendant's dispatch officer was able to find video footage of the vehicle arriving at approximately 9:30 p.m. The driver in the video matched plaintiff's description.

At approximately 10:40 p.m., defendant began administering standardized field sobriety testing, during which plaintiff exhibited several signs of intoxication, including losing his balance to the point where officers had to catch him. By 10:46 p.m., defendant had placed plaintiff under arrest for suspicion of driving while intoxicated and driving with a revoked license. One of the officers handcuffed plaintiff and sat him on the ground. After about 10 to 15 minutes, plaintiff was put into a squad car.

Plaintiff was charged with operating a motor vehicle while intoxicated (sixth offense) in Dane County case no. 16-CF-1672. Plaintiff's attorney filed a motion to suppress, challenging the administration of the preliminary breath test. The state circuit court granted the motion, agreeing that the test was invalid and that all evidence obtained afterwards had to be suppressed as "fruit of the poisonous tree."

OPINION

Plaintiff was granted leave to proceed on a Fourth Amendment claim that defendant arrested him without probable cause. In his motion for summary judgment, defendant contends that he is entitled to qualified immunity with respect to that claim because he had arguable probable cause to arrest plaintiff. Anticipating that plaintiff may seek to challenge the preliminary breath test on similar grounds, defendant argues that he is entitled to qualified immunity with respect to that detention because he had arguable probable cause to believe that plaintiff had been or was about to operate a vehicle while under the influence of alcohol. He also argues that he was acting within the scope of the "community caretaker exception" in ordering plaintiff to take the preliminary breath test.

In response, plaintiff raises three arguments: (1) defendant conducted an illegal investigatory stop without reasonable suspicion when he took plaintiff's driver's license for a warrant check; (2) the duration and nature of plaintiff's subsequent detention up to the time of the formal arrest amounted to a de facto arrest without probable cause; and (3) defendant's reliance on the community caretaker exception for the preliminary breath test

is pretext for unconstitutional conduct. Although defendant argues that plaintiff is asserting "new claims" related to the investigatory detention and preliminary breath test, I find that they may be considered because they are sufficiently related to the false arrest claim on which plaintiff was allowed to proceed. Plaintiff includes several allegations in his complaint related to the warrant check and preliminary breath test that are sufficient to put defendant on notice that plaintiff objected to his pre-arrest detention as well as his subsequent arrest. However, because plaintiff does not respond to defendant's arguments concerning the actual arrest at 10:46 p.m., I will assume that he has abandoned that aspect of his claim. C & N Corp. v. Kane, 756 F.3d 1024, 1026 (7th Cir. 2014) (nonmovant's failure to present argument in response to summary judgment motion qualifies as waiver of that argument); Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

## A. Legal Standard

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). In other words, qualified immunity "shields from liability police officers 'who act in ways they reasonably believe to be lawful.'" Jewett v. Anders, 521 F.3d 818, 822 (7th Cir. 2008) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)). Qualified immunity is an affirmative defense, but plaintiff carries the burden of defeating it once it is raised. Rabin v. Flynn, 725

F.3d 628, 632 (7th Cir. 2013).  To defeat the qualified immunity defense, a plaintiff must show that:  (1) the defendant violated a constitutional right and (2) the right was clearly established at the time so that it would have been clear to a reasonable officer that his conduct was unlawful in the situation.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001).  These questions can be addressed in either order.  Pearson v. Callahan, 555 U.S. 223, 236 (2009); Ewell v. Toney, 853 F.3d 911, 919 (7th Cir. 2017).

Relevant in this case is the Fourth Amendment, which protects individuals against unreasonable searches and seizures.  "Ordinarily seizures are 'reasonable' only when supported by probable cause to believe an individual has committed a crime."  Matz v. Klotka, 769 F.3d 517, 522 (7th Cir. 2014).  See also Maniscalco v. Simon, 712 F.3d 1139, 1143 (7th Cir. 2013) ("Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983.").  "An officer has probable cause to make an arrest only when the facts and circumstances within his knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense."  Gibbs v. Lomas, 755 F.3d 529, 537 (7th Cir. 2014) (citation omitted).  "In making this assessment, the question is whether, given the 'totality of the circumstances,' a reasonable officer would believe that the suspect had committed a crime."  Id. (quoting Jones v. City of Elkhart, Indiana, 737 F.3d 1107, 1114 (7th Cir. 2013)).  This standard "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable."  Fleming v. Livingston County, Illinois, 674 F.3d 874, 879 (7th Cir. 2012) (citations omitted).  In addition, the subjective

motivations of the officer are irrelevant.  Id.; Abbott v. Sangamon County, Illinois, 705 F.3d 706, 714 (7th Cir. 2013) ("Determining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant.").  Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking.  Devenpeck v. Alford, 543 U. S. 146, 153-55, n.2 (2004).  See also McComas v. Brickley, 673 F.3d 722, 727 (7th Cir. 2012) ("[A]n arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that some criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect.").

A longstanding exception to this rule arises under Terry v. Ohio, 392 U.S. 1, 21-22 (1968), which authorizes brief investigatory detentions based on the less demanding standard of reasonable suspicion of criminal activity.  See also Wis. Stat. § 968.24 ("After having identified himself or herself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of the person's conduct.").  A Terry stop "is permitted when it demands only a limited intrusion into an individual's privacy and rests on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"  Matz, 769 F.3d at 522 (quoting Terry, 392 U.S. at 21).  Although reasonable suspicion is a less

demanding standard than probable cause, the officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. Id. "A Terry stop based on reasonable suspicion can ripen into a de facto arrest that must be based on probable cause if it continues too long or becomes unreasonably intrusive." United States v. Bullock, 632 F.3d 1004, 1015 (7th Cir. 2011).

Therefore, defendant is entitled to qualified immunity if a reasonable officer could have believed that "arguable" reasonable suspicion or probable cause existed to detain plaintiff. Fleming v. Livingston County, Illinois, 674 F.3d 874, 878 (7th Cir. 2012) (Humphrey v. Staszak, 148 F.3d 719, 725 (7th Cir.1998)); Rouei v. Vill. of Skokie, 61 F. Supp. 3d 765, 778 (N.D. Ill. 2014) (citing Huff v. Reichert, 744 F.3d 999, 1007 (7th Cir. 2014)); Bernardi v. Klein, 682 F. Supp. 2d 894, 903 (W.D. Wis. 2010). Arguable reasonable suspicion and probable cause are established "when 'a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that [reasonable suspicion or] probable cause existed in light of well-established law.'" Fleming, 674 F.3d at 880.

To overcome defendant's qualified immunity defense, plaintiff must "'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018) (citing White v. Pauly, 137 S. Ct. 548, 552 (2017) (per curiam)). See also Reed v. Palmer, 906 F.3d 540, 547 (7th Cir. 2018) ("[P]laintiffs must point to a "closely analogous case" finding the alleged violation unlawful."). Although it is not necessary to have "'a case directly on point,' existing

precedent must place the lawfulness of the particular arrest 'beyond debate.'" Wesby, 138 S. Ct. at 590 (internal citations omitted) ("The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."). I will address separately the parties' arguments with respect to each aspect of plaintiff's pre-arrest detention.

## B. Taking of Plaintiff's Driver's License

Plaintiff avers that he was not free to leave as soon as defendant took his driver's license for a warrant check. United States v. Tyler, 512 F.3d 405, 410-11 (7th Cir. 2008) (officers' retention of defendant's identification while they ran warrant check qualified as seizure). Defendant has not disputed that the warrant check qualifies as an investigative detention under Terry for purposes of summary judgment, but argues that there was at least arguable reasonable suspicion that plaintiff had driven or was going to drive drunk. Wis. Stat. § 346.63 (no person may drive or operate motor vehicle while under influence of intoxicant).

It is undisputed that at the time defendant asked plaintiff for his identification, he knew that (1) plaintiff showed signs of intoxication, including smelling of alcohol, slurred speech, trouble keeping his balance and a hard time keeping still; (2) plaintiff was wearing a work shirt worn by the capitol building cleaning crew; (3) plaintiff was sitting near a vehicle parked at the capitol building and the keys were in the vehicle; (4) plaintiff responded to defendant's request to turn the music down; and (5) plaintiff appeared to be

the only person associated with the vehicle at the time. Although plaintiff has averred that he did not "feel" intoxicated, a reasonable officer with this information in the same circumstance could suspect—even if mistakenly—that plaintiff was intoxicated when defendant arrived at the scene. Tyler, 512 F.3d at 411 (usual signs of intoxication cited by law enforcement officers include stumbling, staggering, weaving, unsteadiness, slurred speech and bloodshot eyes). The closer question is whether arguable reasonable suspicion existed that plaintiff had driven the vehicle or was going to drive it in the future.

Under Wis. Stat. § 346.63(3)(b), "operate" means "the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion." As plaintiff argues, Wisconsin courts have found that the factors sufficient to support a finding of probable cause (and presumably reasonable suspicion) in drunk driving cases include more than just signs of intoxication. E.g., State v. Kennedy, 2014 WI 132, ¶¶ 22-23, 359 Wis. 2d 454, 468-69, 856 N.W.2d 834, 841 (officers reported to scene of traffic accident at which skid marks facing wrong direction led to defendant's car, defendant was identified as driver and defendant had bloodshot and glassy eyes, had slurred speech, was swaying and smelled of alcohol); State v. Welsh, 108 Wis.2d 319, 333-35, 321 N.W.2d 245 (1982), overruled on other grounds, Welsh v. Wisconsin, 466 U.S. 740 (1984) (erratic driving and subsequent "stumbling" after driver exited vehicle supported probable cause); State v. Meye, 2010 WI App 120, ¶ 6, 329 Wis. 2d 272, 789 N.W.2d 755 ("Not one [of the many cases in which the state court of appeals or supreme court has found facts sufficient for an investigatory stop] has held that reasonable suspicion to seize a person on suspicion of drunk

driving arises simply from smelling alcohol on a person who has alighted from a vehicle after it has stopped—and nothing else."); State v. Babbitt, 188 Wis.2d 349, 357, 525 N.W.2d 102 (Ct. App. 1994) (officer's observation of erratic driving and physical signs of intoxication supported probable cause).

In this case, defendant did not observe plaintiff driving erratically or even sitting behind the wheel of the vehicle when he asked for plaintiff's identification; plaintiff was sitting on a bench near a parked vehicle that was not running. However, as defendant points out, Wisconsin courts have held that "operation of a vehicle" does not necessarily mean putting the vehicle in motion. Operation of a vehicle can occur even when it is standing still so long as the person is keeping the vehicle in restraint or in a position to regulate its movements. Milwaukee County v. Proegler, 95 Wis. 2d 614, 628-29, 291 N.W.2d 608 (Ct. App. 1980) (citing State v. Ruona, 133 Mont. 243, 321 P.2d 615, 618 (1958)) (officers who found truck stopped but not completely pulled off highway with motor running, lights on and defendant asleep behind wheel could reasonably infer that defendant was in actual physical control of truck and therefore "operating" it within meaning of § 346.63). Defendant argues that there was at least arguable reasonable suspicion that plaintiff was in physical control of the vehicle parked near him because plaintiff knew the keys were in the vehicle, plaintiff responded to defendant's request to turn down the music and there was no one else around who seemed to have access or control over the vehicle. Although plaintiff argues that these facts are not sufficient to establish reasonable suspicion, he has not identified any legal authority establishing that an officer acting under similar circumstances

violated the Fourth Amendment. <u>Hernandez v. Cook County Sheriff's Office</u>, 634 F.3d 906, 915 (7th Cir. 2011) (constitutional right is "clearly established" when reasonable official would know that his "conduct was unlawful in the situation he confronted"). Although plaintiff states generally that the court should consider whether defendant's conduct was so egregious or unreasonable that no reasonable official could have thought he was acting lawfully, <u>Reed v. Palmer</u>, 906 F.3d 540, 547 (7th Cir. 2018), he has failed to show that defendant's conduct rose to this level in this case. Defendant has articulated specific facts from which a reasonable officer could infer—even mistakenly—that plaintiff had driven or would be operating a vehicle while intoxicated. Accordingly, defendant is entitled to qualified immunity with respect to the <u>Terry</u> stop.

## C. <u>Subsequent Detention and Breath Test of Plaintiff</u>

Plaintiff argues that the stop lasted so long and became so intrusive that it became a de facto arrest without arguable probable cause. The undisputed facts show that after defendant ran the warrant check, he questioned plaintiff for about eight minutes, asking him whether he had been drinking and driving. Plaintiff said that he had not been driving, but he admitted having had a couple of beers. Defendant then asked plaintiff if there was someone he could call to pick him up, plaintiff gave defendant his wife's number and defendant called plaintiff's wife, who agreed to come pick up plaintiff. All told, defendant held plaintiff a total of 24 minutes from the time he stopped him until Sergeant Hyatt arrived and the officers learned that witnesses had seen plaintiff driving erratically not long

before defendant arrived on scene. (Plaintiff does not argue that the information that defendant later obtained from witnesses and surveillance video footage failed to establish arguable probable cause for the standardized field testing that led to his subsequent arrest.) Although defendant did not gain any further information about plaintiff's past or future criminal activity during this period, plaintiff has failed to cite any authority showing that the length of the detention or the questioning was clearly prolonged or intrusive or that it was unreasonable for defendant to stay around to make sure that plaintiff got a ride home.

Defendant's decision to order a preliminary breath test during this period is a closer call. Under Wisconsin law, an officer may conduct a preliminary breath test in cases in which he has "probable cause to believe" the person was operating under the influence. Wis. Stat. § 343.303. "'[P]robable cause to believe' refers to a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop, . . . but less than the level of proof required to establish probable cause for arrest." County of Jefferson v. Renz, 231 Wis. 2d 293, 316, 603 N.W.2d 541, 552 (1999). The facts in this case do not satisfy this standard. Defendant had not yet learned from witnesses or the surveillance camera footage that plaintiff recently had driven the vehicle into the capitol driveway. Plaintiff also had made no moves toward the vehicle and seemed committed to wait for his wife to pick him up.

Defendant contends that he is entitled to qualified immunity because he was acting arguably within the "community caretaker" doctrine, which "recognizes that police sometimes take actions not for any criminal law enforcement purpose but rather to protect

members of the public." <u>Sutterfield v. City of Milwaukee</u>, 751 F.3d 542, 553 (7th Cir. 2014). <u>See also</u> <u>State v. Blatterman</u>, 2015 WI 46, ¶ 39, 362 Wis. 2d 138, 166, 864 N.W.2d 26, 39 (internal citation omitted) (officer exercises community caretaker function rather than law enforcement function in cases in which officer discovers member of public in need of assistance). In Wisconsin, there is a three-part test for evaluating whether the doctrine applies: (1) whether a Fourth Amendment seizure has occurred; (2) whether the police conduct was a "bona fide" community caretaker function; and (3) whether the public interest outweighs the intrusion on the privacy of the individual. <u>Id.</u> at ¶ 42, 362 Wis. 2d at 168. Assessing whether an officer acted for a bona fide community purpose "ultimately turns on whether the officer can articulate[] an objectively reasonable basis for exercising a community caretaker function." <u>State v. Asboth</u>, 2017 WI 76, ¶ 15, 376 Wis. 2d 644, 898 N.W.2d 541.

In this case, defendant says that he was concerned that plaintiff might be incapacitated by alcohol and require medical attention. Wis. Stat. 51.45(11)(b) (defining law enforcement responsibilities related to persons found to be incapacitated by alcohol). Plaintiff challenges the reasonableness of defendant's belief in light of the fact that plaintiff did not exhibit any specific behavior that would have called his health or mental state into question. For example, plaintiff says that he did not disobey orders, threaten defendant, act erratically or complain about any physical illness. <u>Cf.</u> <u>Blatterman</u>, 362 Wis. 2d at ¶ 45 (wife accused defendant of trying to blow up their house by filling it with gas and defendant was erratic, disoriented, inappropriately dressed for cold weather and complaining of chest pain).

However, as with the other aspects of his stop and detention, plaintiff has failed to cite any legal authority showing that defendant clearly acted outside the bounds of the community caretaker doctrine under the circumstances present in this case. Defendant's belief that a preliminary breath test was needed to assess plaintiff's need for medical attention was not so egregious or unreasonable that no reasonable official could have thought he was acting lawfully had he taken the same step. Accordingly, I find that defendant also is entitled to qualified immunity with respect to plaintiff's subsequent detention and preliminary breath test.

ORDER

IT IS ORDERED that defendant Bradley Overwachter's motion for summary judgment, dkt. #17, is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 15th day of January, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge